# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:16-CV-179-DCK

| | |
|---|---|
| INDRATECH, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| FIBRIX, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** regarding the "Joint Claim Construction Statement" (Document No. 25) filed July 3, 2017; "Plaintiff Indratech, LLC's Opening Claim Construction Brief" (Document No. 27) filed August 14, 2017; "Defendant Fibrix, LLC's Responsive Claim Construction Brief" (Document No. 28) filed August 28, 2017; "Plaintiff Indratech, LLC's Reply Claim Construction Brief" (Document No. 30) filed September 4, 2017; and "Defendant Fibrix, LLC's Sur-Reply Claim Construction Brief" (Document No. 33) filed September 13, 2017. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and review and construction of the parties' disputed terms is now appropriate.

## I. BACKGROUND

Plaintiff Indratech, LLC, ("Plaintiff" or "Indratech") initiated this action with the filing of its "Complaint & Jury Demand" (Document No. 1) (the "Complaint") on September 30, 2016. The Complaint asserts that Defendant Fibrix, LLC ("Defendant" or "Fibrix") has contributed to and continues to contribute to the infringement of United States Patent No. 9,392,877 (the "877 patent"), entitled "Turntable Spring Mattress and Method of Making Same," issued by the United States Patent and Trademark Office on July 19, 2016. (Document No. 1, pp.2-5). Patent '877

relates to the field of mattresses, particularly mattresses having innersprings or a spring core assembly. (Document No. 27, p.7). Plaintiff contends that Defendant's "customers directly infringe the '877 patent by using the Fibrix rail to manufacture, sell, offer to sell, or import mattresses comprising a spring core assembly with the fixed Fibrix rail around its perimeter." (Document No. 1, p.5). "Defendant Fibrix, LLC's Answer, Affirmative Defenses, Counterclaim" (Document No. 15) was filed on December 5, 2016.

On January 13, 2017, the parties filed their "Utility Patent Certificate Of Initial Attorneys' Conference" (Document No. 19) and "Joint Stipulation Of Consent To Exercise Jurisdiction By A U.S. Magistrate Judge" (Document No. 20). The Court issued the "Utility Patent Claim Construction Scheduling Order" (Document No. 21) on January 21, 2017.

Based on the parties' briefs referenced above, and the presentations by counsel at a Markman, or claim construction, hearing held on December 12, 2017, this matter is now ripe for review and a determination by the Court regarding the six (6) disputed terms in the underlying '877 patent. See (Document Nos. 25 and 35); see also Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) aff'd, 517 U.S. 370 (1996).

## II.     LEGAL STANDARDS

Claim construction is a matter of law, to be decided by the Court. Markman v. Westview Instruments, Inc., 517 U.S. 370, 387-88 (1996). "The purpose of a Markman hearing is to ascertain the meaning of a patent's claims so that it is clear precisely what has been patented and, by consequence, the protections the patent therefore affords the patent holder." Ohio Willow Wood Co. v. Daw Industries, Inc., 2006 WL 462364 at *2 (S.D.Ohio, Feb. 22, 2006). Claims should be construed with a focus "on the objective test of what one of ordinary skill in the art at the time of the invention would have understood the term to mean." Markman, 52 F.3d 967, 986 (Fed.Cir.

2

1995).  "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Phillips v. AWH Corp., 415 F.3d at 1313 (Fed.Cir. 2005).

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" Phillips v. AWH Corp., 415 F.3d at 1312 (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc., 381 F.3d 1111, 1115 (Fed.Cir. 2004)); see also Vitronics Corp. v. Conceptronic, 90 F.3d 1576, 1582 (Fed.Cir. 1996) ("we look to the words of the claims themselves . . . to define the scope of the patented invention."). The words of a claim are "generally given their ordinary and customary meaning" unless a patentee has clearly stated in the patent specification or file history that a different meaning should be applied. Vitronics, 90 F.3d at 1582. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Applied Material, Inc. v. Tokyo Seimitsu, Co., Ltd., 446 F.Supp.2d 525, 529 (E.D.Va. 2006) (citing Phillips, 415 F.3d at 1315). "Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." Vitronics Corp., 90 F.3d at 1582 (citing Hoechst Celanese Corp. v. BP Chems. Ltd., 78 F.3d 1575, 1578 (Fed.Cir. 1996).

After careful consideration of the intrinsic evidence - the claim language, the specification, and the prosecution history - the undersigned is prepared to construe the disputed terms of the '877 patent.

### III. DISCUSSION

The parties dispute the proper construction of six (6) terms or phrases in the '877 patent: five (5) terms in Claim 1, and one (1) term in Claim 4. See (Document No. 25 and Document No. 1-1). Plaintiff Indratech proposes that each of the disputed terms be construed as having its "plain and ordinary meaning." See (Document Nos. 25, 27, 30 and 35). Defendant Fibrix, however, proposes new language to define those terms and/or argues that the terms are "indefinite." See (Document Nos. 25, 28, 33, and 35). The undersigned will address and attempt to construe each disputed term/phrase below.

**A. Claim 1**

Plaintiff's first claim of the '877 patent states the following:

> **1**. A mattress comprising:
> a spring core assembly including a plurality of coil springs, the spring core assembly having a length, width, and a height, wherein the ***outermost coil springs*** provide a spring core assembly ***perimeter***, wherein the coil springs provide a first spring rate in a direction of a height of the spring core assembly; and
> a polymer structure comprising polyester fibers interlinked with one another, wherein the polymer structure is arranged outside of the outermost coil springs, wherein the polymer structure provides a second spring rate in the direction of the height of the spring core assembly, wherein the second spring rate is an ***increased spring rate in the direction of the height of the spring core assembly relative to a polymer structure comprising only randomly oriented fibers***, wherein, when the mattress is in an assembled condition, the polymer structure is ***arranged at*** the spring core assembly perimeter to provide ***a monolithic perimeter rail*** without any of the plurality of coil springs.

(Document No. 1-1, p.11; Document No. 35) (emphasis added to disputed terms).

4

1. <u>outermost coil springs</u>

As noted above, for this term and all terms in dispute, Plaintiff proposes a claim construction of the "plain and ordinary meaning." Plaintiff contends that "[a]ll claim 1 requires is that the spring core assembly's perimeter is provided by its *outermost* coil springs." (Document No. 27, p.18).

Defendant suggests that "outermost coil springs" should be construed as the "coil springs that together form the outer edges of the spring core assembly." (Document No. 28, p.12). Defendant then asserts that the parties agree "that there is a defined set of springs that make up the spring core assembly perimeter." (Document No. 28, p.13). Defendant contends that Plaintiff is attempting to redefine the set of "outermost coil springs" by referring to its marked-up Figure 3A from the patent, where Plaintiff refers to highlighted "orange springs." <u>Id.</u> (citing Document No. 27, p.18). Defendant agrees that the springs highlighted by Plaintiff are *some* of the "outermost coil springs," but interprets Plaintiff's position as being that the phrase "outermost coil springs" does not refer to *the entire group* of coil springs that together form the outer edges of the spring core assembly. <u>Id.</u>

In its reply brief, Plaintiff re-asserts that the "plain and ordinary meaning" of "outermost coil springs" is sufficient, and declines to directly address whether the "plain and ordinary meaning" includes all, or the entire group, of the outermost coil springs. (Document No. 30, p.8). However, Plaintiff does state that the Defendant's theory that "the outermost coil springs must mean all of the outermost coil springs . . . improperly limits the claims to one embodiment of the '877 patent." <u>Id.</u> (citing <u>Phillips</u>, 415 F.3d at 1323).

The Court includes the original and highlighted depictions of figure 3A below.



(Document No. 1-1, pp.2, 4) (Fig. 3A of '877 patent).



(Document No. 27, p.17) (Fig. 3A with orange highlight emphasis provided by Plaintiff).

The undersigned's original impression was that the "plain and ordinary meaning" of "outermost coil springs" is sufficient, and that such meaning would be the same or nearly the same as Defendant's interpretation. However, Plaintiff's arguments suggest, if not insist, that the language of the patent be construed so that the "outermost coil springs" could be some number of springs less than all the outermost coil springs. (Document No. 30, p.8). The undersigned

6

disagrees. Instead, the undersigned finds that the intrinsic evidence, and even Plaintiff's own highlighted version of figure 3A, indicate that "outermost coil springs" is properly construed as *all* the outermost coil springs. The words immediately following "outermost coil springs" state that they "provide a spring core assembly perimeter." Figure 3A depicts a perimeter (43) that clearly goes all the way around the spring core assembly. See (Document No. 1-1, pp. 4, 10). If one construes the "outermost coil springs" to possibly be some undefined number less than all of the springs, they would not provide a "perimeter" as referenced in the patent's specifications. (Document No. 1-1, p.11).

Plaintiff contends that the term is used "in an easily-understood, ordinary way," and that "[o]ne skilled in the art would know the claims are referring to the orange springs in the image above." (Document No. 27, p.18). Plaintiff's contention makes sense, until the Court tries to reconcile this statement with the diagrams above and Plaintiff's suggestion that the "outermost coil springs" do not include all the outermost coil springs. (Document No. 30, p.8). Notably, Plaintiff's depiction of figure 3A highlights (originally in orange) *all* the outermost coil springs visible in the drawing. See (Document No. 27, p.17

While arguing that the "plain and ordinary meaning" should be adopted by the Court, Plaintiff declines to describe that meaning, or explain how "outermost" might mean some, but not all, the outermost coil springs. Plaintiff's position indicates that the term in dispute here has more than one "ordinary" meaning and must be construed by the Court. See O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co., Ltd., 521 F.3d 1351, 1361 (Fed.Cir. 2008).

Based on the reasoning above, the undersigned construes "outermost coil springs" in patent '877 as referring to "*all* the outermost coil springs."

2. perimeter

"Perimeter" also seems like a term that would be a strong candidate for construction based on its "plain and ordinary meaning," but Plaintiff's refusal to accept Defendant's proposed construction, or to elaborate further on its own proposed construction, will require the Court to construe the term. Plaintiff argues that "continuous boundary around the area" is improper, and the dictionary definitions also identified by Defendant are inadequate and overly limiting. (Document No. 27, p.20). Moreover, Plaintiff asserted at the hearing that "perimeter" should also not be construed as a geometrical term, even though "one skilled in the art" and/or a typical juror would likely construe the plain and ordinary meaning consistent with what they learned in geometry class in school. However, Plaintiff did concede during its power point presentation in the hearing that an "unnecessary alternate proposal: 'boundary of an area,'" is acceptable.

The undersigned agrees that "boundary of an area" is an appropriate construction of perimeter. It is also consistent with the intrinsic evidence. For example, reading claims 1, 7, and 8 together supports a finding that the patent describes polymer structures that are "arranged at" and "substantially surround" the "spring core assembly perimeter," including polymer structures on each of the four (4) sides of the spring core assembly. (Document No. 1-1, p.11).

The undersigned will decline to determine that the perimeter is necessarily "continuous," or to define "continuous," but the undersigned is persuaded that at minimum the term perimeter as used here includes four (4) sides of a rectangle, as shown in figure 3A. (Document No. 1-1, p.4). In short, the undersigned finds that "perimeter" should be construed as the "boundary of the area." In this instance, the outermost coil springs create or provide a spring core assembly perimeter that forms the boundary of the spring core assembly.

3. <u>increased spring rate . . .</u>

Next, the parties dispute a phrase consisting of twenty-four (24) words - ***increased spring rate in the direction of the height of the spring core assembly relative to a polymer structure comprising only randomly oriented fibers***. (Document No.1-1, p.11). Plaintiff again contends that the phrase can be properly construed by its "plain and ordinary meaning." (Document No. 27, pp.21-23). Defendant asserts that this phrase is "indefinite." (Document No. 28, pp.13-15).

Plaintiff first argues that the burden is on Defendant to establish that the claim is indefinite by clear and convincing evidence and that it will be unable to do so. (Document No. 27, p.21) (citing Dow Chem. Co. v. Nova Chemicals Corp., 809 F.3d 1223, 1227 (Fed. Cir. 2015). Plaintiff notes that "[t]he test for definiteness is whether one skilled in the art would understand the bounds of the claim when read in light of the specification." (Document No 27, p.23) (quoting Miles Labs., Inc. v. Shandon Inc., 997 F.2d 870, 875 (Fed. Cir. 1993)).

Plaintiff contends that claim 1 explains that "the claimed polymer structure is stiffer in the vertical or height direction because it includes a fiber arrangement designed to achieve this stiffness; randomly oriented structures, on the other hand, have uniform properties that *tend* to provide a uniform stiffness in three-dimensions (i.e., length, width, and height)." (Document No. 27, p.22) (emphasis added). Plaintiff concludes that one skilled in the art would readily understand the bounds of its claim. (Document No. 27, p.23).

In response, Defendant notes that whether a mattress falls within the scope of claims 1-10 depends on the spring rate of the claimed polymer structure (the "second spring rate"). (Document No. 28, p.18). Defendant contends that Plaintiff relies on an incomplete comparison to quantify the second spring rate. Id. Defendant further contends that because the specification does not provide adequate guidance as to the meaning of "increased spring rate," the phrase is indefinite. Id. "The specification provides none of the guidance regarding the physical properties or

9

characteristics of the 'polymer structure comprising only randomly oriented fibers' necessary to draw any meaningful comparison." (Document No. 28, p.19) (quoting Document No. 1-1, col. 4, lines 50-54). "[A]bsolute or mathematical precision is not required, [but] it is not enough . . . to identify '*some standard* for measuring the scope of the phrase.'" Id. (quoting Interval Licensing LLC v. AOL, Inc., 766 F.3d 1364, 1370-71 (Fed. Cir. 2014)). "The Supreme Court explained that a patent does not satisfy the definiteness requirement of § 112 merely because "a court can ascribe *some* meaning to a patent's claims." Id. (citing Interval Licensing LLC, 766 F.3d at 1371 (quoting Nautilus v. Biosig Instruments, Inc.,134 S.Ct. at 2130 (2014)).

Defendant notes that there is no guidance regarding properties such as: the dimensions of the polymer structure; its density; the diameter of the fibers; and what type of polymer fibers. Id. Defendant argues that these physical properties affect the spring rate dramatically, but are left undefined. (Document No. 28, p.20). "[W]ithout an objective boundary for measuring the 'increased spring rate,' the claimed polymer structure could literally be any polymer structure Indratech wants it to be, as long as its spring rate is 'increased' relative to some other polymer structure that comprises only randomly oriented fibers." Id.

Defendant also notes that Plaintiff now suggests that the plain and ordinary meaning of "a polymer fiber structure comprising only randomly oriented fibers," should be "a rearrangement of the same set of fibers within the same 3-D space" - but, "this is not what the claim states nor is it supported by the specification." Id. (quoting Document No. 27, p.9). Defendant concludes that as the patent is written, a third party would not know whether it is infringing.

The crux of Plaintiff's reply brief is that Defendant has not satisfied its burden of showing that one skilled in the art would not understand the scope of the invention. (Document No. 30, p.10). Plaintiff seems to suggest that Defendant's concern about multiple variables that could

impact the scope of the claim, is misplaced – while apparently conceding that if there were such variables "there could be no meaningful comparison." Id.

Finally, Defendant's sur-reply states that:

> When, as in this case, the specification and claim language lack any of the objective boundaries necessary to inform "with *reasonable certainty*" what the "second spring rate" is, the analysis begins and ends with the intrinsic evidence. Id. at 1345 (emphasis in original). In this regard, not only is the evidence in this case clear and convincing that the language is indefinite, Indratech can point to no evidence to the contrary.

(Document No. 33, p.13).

As the Court signaled to the parties at the hearing, this phrase seems especially troublesome to define. Both its length, and terms such as "increased spring rate' and "relative to," suggest to the undersigned that the phrase's "plain and ordinary meaning" is open to broad and inconsistent interpretation by "ones skilled in the art" and/or a jury. The undersigned is not persuaded that this disputed part of Plaintiff's claim provides "clear, concise, and exact terms as to enable any person skilled in the art to which it pertains…." 35 U.S.C. § 112(a). Like Defendant, the undersigned is concerned that there are too many open variables regarding the "polymer fiber structure comprising only randomly oriented fibers."

The Court finds the following cases instructive that find terms similar to the ones included in the disputed phrase here to be indefinite. See Aubin Industries, Inc. v. Caster Concepts, Inc., 2017 WL 4284715, at *7-8 (E.D. Cal. 2017) ("closely spaced… relationship . . raises the question of just how close the relationship needs to be to fall within the term's purview"); Interval Licensing LLC v. AOL, Inc., 766 F.3d 1364, 1372 (Fed. Cir. 2014) ("the specification is at best muddled, leaving one unsure of whether the 'unobtrusive manner' phrase has temporal dimensions as well as spatial dimensions. The hazy relationship between the claims and the written description

11

fails to provide the clarity that the subjective claim language needs"); Innovative Display Techs. LLC v. Acer Inc., 2014 WL 4230037, at *26 (E.D.Tex. Aug. 26, 2014) (finding "quite small" indefinite "[i]n the absence of any objective criteria for evaluating what on its face is a purely subjective term, the disputed term is indefinite"); Semcon IP Inc. v. Huawei Device USA Inc., 2017 WL 2972193, at *25 (E.D.Tex. July 12, 2017) ("'Relatively short messages' is a term of degree and the '876 Patent does not provide an objective standard by which to determine if a message is 'relatively short.'"); and Image Processing Techs., LLC v. Samsung Elecs. Co., Ltd., 2017 WL 2672616, at *33 (E.D.Tex. June 21, 2017) (the term "successively increasing the size of a selected area until the boundary of the target is found" is indefinite).

In sum, the undersigned finds Defendant's arguments persuasive that this phrase is "indefinite."

4. arranged at

Next, Defendant suggests that the term "arranged at" would be better construed as "disposed adjacent to." (Document No. 28, p.21). However, in the briefing and at the hearing, Defendant also represented that it is willing to defer to Plaintiff's definition of this term. See Id. ("to the extent Indratech would rather remain married to the literal meaning of its chosen language and the ramifications thereof, then Fibrix will withdraw its proposed construction.")

Although, like Defendant, the undersigned suspects there might be another term that more accurately reflects Plaintiff's intended meaning, under the circumstances of this case the Court will decline to otherwise construe "arranged at." As such, "arranged at" shall be construed as having its "plain and ordinary meaning."

5. monolithic perimeter rail

As with the previous terms, Plaintiff contends that "monolithic perimeter rail" should be given its "plain and ordinary meaning." (Document No. 27, pp.25-29). Plaintiff argues that the term merely means "without springs." However, Plaintiff offers little, if any, intrinsic or extrinsic evidence that one skilled in the art would know that a "monolithic" perimeter rail is a perimeter rail without springs. Moreover, the words immediately following this disputed term state "without any of the plurality of coil springs." See (Document No. 1-1, p.11, col.6, l.7-9). Applying Plaintiff's argument, one would read the term as something like "without springs perimeter rail without any of the plurality of coil springs." Such a construction is non-sensical and suggests that Plaintiff may be re-interpreting its own original construction.

Defendant proposes that the term be deemed indefinite, or alternatively, as "rigid structural support formed as a single piece without any joints or seams bounding the area of the spring core assembly." While Defendant's construction is more consistent with dictionary definitions of "monolithic," the undersigned finds it to be inconsistent with the rest of the patent. For example, claims 7 and 8 discuss multiple polymer structures that surround the spring core assembly. See (Document No. 1-1, p.11, col.6, l.29-46). Thus, construing the term as meaning a single piece without any joints or seams appears to be overly restrictive and inconsistent with the intrinsic evidence.

Based on the foregoing, the undersigned will construe the term as simply "perimeter rail." The claim will then read "a perimeter rail without any of the plurality of coil springs."

**B. Claim 4**

The fourth claim states:

> **4**. The mattress as recited in claim 1, wherein the polymer structure *excludes coil springs*.

13

(Document No. 1-1, p.11; Document No. 35) (emphasis added to disputed term).

Defendant argues that the term "excludes coil springs" in claim 4 should be construed as indefinite. (Document No. 28, pp.29-30). Defendant contends that Plaintiff is attempting to "further limit claim 1, by claiming that 'the polymer structure excludes coil springs.'" (Document No. 28, p.30).

Plaintiff argues that "there is no evidence of 'indefiniteness,' let alone clear and convincing evidence." (Document No. 30, p.17).

In short, the undersigned does not find either side's arguments particularly helpful here. Without some more persuasive argument or evidence by Defendant, therefore, the undersigned finds that "excludes coil springs" should be construed as having its "plain and ordinary meaning."

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that the claims of the '877 patent are construed as described above. The parties shall proceed in a manner consistent with the findings of this Order.

Signed: January 18, 2018

David C. Keesler
United States Magistrate Judge