# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:16-CV-179-DCK

| | |
|---|---|
| INDRATECH, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) **ORDER** |
| FIBRIX, LLC, | ) ) ) |
| Defendant. | ) ) ) |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff Indratech LLC's Motion For Reconsideration Of This Court's Claim Construction Order" (Document No. 45). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is ripe for review. After careful consideration of the record, the briefs, and applicable authority, the undersigned will <u>deny</u> the motion.

## BACKGROUND

Plaintiff Indratech, LLC, ("Plaintiff" or "Indratech") initiated this action with the filing of its "Complaint & Jury Demand" (Document No. 1) (the "Complaint") on September 30, 2016. The Complaint asserts that Defendant Fibrix, LLC ("Defendant" or "Fibrix") has contributed to and continues to contribute to the infringement of United States Patent No. 9,392,877 (the "'877 patent"), entitled "Turntable Spring Mattress and Method of Making Same," issued by the United States Patent and Trademark Office on July 19, 2016. (Document No. 1, pp.2-5). Patent '877 relates to the field of mattresses, particularly mattresses having innersprings or a spring core assembly. (Document No. 27, p.7). Plaintiff contends that Defendant's "customers directly infringe the '877 patent by using the Fibrix rail to manufacture, sell, offer to sell, or import

mattresses comprising a spring core assembly with the fixed Fibrix rail around its perimeter." (Document No. 1, p.5). "Defendant Fibrix, LLC's Answer, Affirmative Defenses, Counterclaim" (Document No. 15) was filed on December 5, 2016.

On January 13, 2017, the parties filed their "Utility Patent Certificate Of Initial Attorneys' Conference" (Document No. 19) and "Joint Stipulation Of Consent To Exercise Jurisdiction By A U.S. Magistrate Judge" (Document No. 20). The Court issued the "Utility Patent Claim Construction Scheduling Order" (Document No. 21) on January 21, 2017.

The parties' "Joint Claim Construction Statement" (Document No. 25) was filed July 3, 2017; "Plaintiff Indratech, LLC's Opening Claim Construction Brief" (Document No. 27) was filed August 14, 2017; "Defendant Fibrix, LLC's Responsive Claim Construction Brief" (Document No. 28) was filed August 28, 2017; "Plaintiff Indratech, LLC's Reply Claim Construction Brief" (Document No. 30) was filed September 4, 2017; and "Defendant Fibrix, LLC's Sur-Reply Claim Construction Brief" (Document No. 33) was filed September 13, 2017.

Based on the parties' claim construction briefs, and the presentations by counsel at a claim construction hearing on December 12, 2017, the Court issued an "Order" (Document No. 42) on January 18, 2018, regarding the six (6) disputed terms in the underlying '877 patent.

"Plaintiff Indratech LLC's Motion For Reconsideration Of This Court's Claim Construction Order" (Document No. 45) was filed on February 16, 2018. By the instant motion, Plaintiff requests that the Court issue a revised order regarding one of the disputed terms – "finding Term 3 ("increased spring rate…") *not* to be indefinite." (Document No. 45, p.1). "Defendant Fibrix, LLC's Response In Opposition To Motion For Reconsideration" (Document No. 48) was filed on March 2, 2018; and "Plaintiff's Reply Brief In Support Of Its Motion For Reconsideration Of This Court's Claim Construction Order" (Document No. 49) was filed on March 9, 2018.

This matter is now ripe for review and disposition.

## LEGAL STANDARDS

Claim construction is a matter of law, to be decided by the Court. Markman v. Westview Instruments, Inc., 517 U.S. 370, 387-88 (1996). "The purpose of a Markman hearing is to ascertain the meaning of a patent's claims so that it is clear precisely what has been patented and, by consequence, the protections the patent therefore affords the patent holder." Ohio Willow Wood Co. v. Daw Industries, Inc., 2006 WL 462364 at *2 (S.D.Ohio, Feb. 22, 2006). Claims should be construed with a focus "on the objective test of what one of ordinary skill in the art at the time of the invention would have understood the term to mean." Markman, 52 F.3d 967, 986 (Fed.Cir. 1995). "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Phillips v. AWH Corp., 415 F.3d at 1313 (Fed.Cir. 2005).

Plaintiff now asks the Court to revise its claim construction as to one (1) of the six (6) disputed terms pursuant to Fed.R.Civ.P. 54(b). See (Document Nos. 42 and 45). Rule 54 provides in part that :

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed.R.Civ.P. 54(b).

Defendant's synopsis of the applicable legal standard for reconsideration does not appear to be disputed, and includes the following:

> The Fourth Circuit has determined that "[m]otions for reconsideration of interlocutory orders are not subject to the strict

standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003). "The discretion afforded by Rule 54(b) 'is not limitless,' however, and 'courts have cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case." *Ross v. Klesius*, No. 16-2040, 2017 U.S. App. LEXIS 21114, at *5-6 (4th Cir. Oct. 25, 2017) (internal citation omitted) (attached as **Exhibit 1**). "It is well settled that a district court should reconsider its prior interlocutory order only where: (1) there has been an intervening change in controlling law, (2) there is additional evidence not previously available, or (3) the prior decision was based on clear error or will work a manifest injustice." *Mayfield v. NASCAR*, Case No. 3:09-CV-220-GCM, 2010 U.S. Dist. LEXIS 136753, at *4-5 (W.D.N.C. Aug. 12, 2010) (attached as **Exhibit 2**) (citing *Baytree Assocs., Inc. v. Dantzler, Inc.*, 2008 U.S. Dist. LEXIS 46660, 2008 WL 2182202, at *3 (W.D.N.C. 2008); *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988)).

… motions for reconsideration "are allowed in certain, limited circumstances." *Wiseman v. First Citizens Bank & Trust Co.*, 215 F.R.D. 507, 509 (W.D.N.C. 2003); *see also*, *Ross*, 2017 U.S. App. LEXIS 21114, at *6 ("Under the law of the case doctrine, a court may revise its interlocutory ruling in limited circumstances."). This Court has previously noted that a motion for reconsideration is only appropriate when:

> the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension . . . [or] a controlling or significant change in the law or facts since the submission of the issue to the Court [has occurred].

*Wiseman*, 215 F.R.D. at 509 (alterations in original). "Such problems rarely arise and the motion to reconsider should be equally rare." *Id.* (internal citation omitted) (emphasis added).

(Document No. 48, pp. 9-10); <u>see also</u> (Document No. 45, pp. 6-7).

## DISCUSSION

Plaintiff contends that the Court's determination that claim 1 of the '877 Patent is indefinite is "based on issues not directly raised or briefed by the parties, leading to a misapprehension by the Court' and thus, "the Order was decided outside the adversarial issues." (Document No. 45,

4

p.7). Plaintiff seems to misinterpret the context of the Court's concern about the words "increased spring rate" and "relative to." (Document No. 45, pp. 7). Moreover, Plaintiff's quote regarding "too many open variables" is incomplete, and thus, misleading. (Document No. 45, pp.7-8).

Contrary to Plaintiff's argument that the Court held the disputed phrase was indefinite "for reasons that were not briefed by either party" and based on issues with "threshold terms," the crux of the Court's decision was to adopt the arguments briefed by Defendant. Id.; see also (Document No. 42, pp. 9-12). In fact, the Court attempted to summarize the parties' briefs on this issue and then stated: "**Like Defendant**, the undersigned is concerned there are too many open variables **regarding the 'polymer fiber structure comprising only randomly oriented fibers**.'" (Document No. 42, p. 11) (emphasis added); see also (Document No. 28, pp. 18-20). The Court concluded "[i]n sum, **the undersigned finds Defendant's arguments persuasive** that this phrase is 'indefinite.'" (Document No. 42, p. 12) (emphasis added).

Prior to reaching that conclusion, the Court quoted Defendant's sur-reply:

> When, as in this case, **the specification and claim language lack any of the objective boundaries necessary to inform "with *reasonable certainty*" what the "second spring rate" is**, the analysis begins and ends with the intrinsic evidence. *Id.* at 1345 (emphasis in original). In this regard, not only is the evidence in this case clear and convincing that the language is indefinite, Indratech can point to no evidence to the contrary.

(Document No. 42, p. 11) (emphasis added) (quoting Document No. 33, p. 13). Although not fully quoted in the decision, part of Defendant's argument the Court found persuasive included the following:

> Indratech relies on an incomplete comparison to quantify this second spring rate. Because the specification does not provide adequate guidance as to the meaning of "increased spring rate," the phrase is indefinite. . . .

5

> In the patent-in-suit, neither Claim 1 nor the specification provides *any* objective boundaries for measuring the scope of the phrase "increased spring rate." In Claim 1, the so-called second spring rate of the claimed polymer structure is described only as being "an increased spring rate," **as compared to the spring rate of some other nebulous polymer structure, merely described as one that "compris[es] only randomly oriented fibers**." . . .
>
> **The specification provides none of the guidance regarding the physical properties or characteristics of the "polymer structure comprising only randomly oriented fibers" necessary to draw any meaningful conclusions from this comparison**. For example, what are the dimensions of the hypothetical polymer structure? What is its density? What are the diameters of its fibers and are they all uniform? What type of polymer comprises its fibers? Some polymers are inherently more flexible than others, while a larger structure with more densely packed fibers would be expected to have a higher spring rate compared to a diminutive structure with smaller, more loosely packed fibers. Obviously, these physical properties can affect the structure's spring rate dramatically, yet they have been left undefined.

(Document No. 28, pp. 18-20) (emphasis added); see also (Document No. 42, pp.9-10) (citing and quoting (Document No. 28, pp. 18-20).

The Court understood that by "spring rate" Plaintiff was referring to an object's stiffness. See (Document No. 45, p. 9). The decision even notes Plaintiff's argument that "the claimed polymer structure **is stiffer** in the vertical or height direction because it includes a fiber arrangement designed **to achieve this stiffness**," and that Plaintiff concluded "that one skilled in the art would readily understand the bounds of its claim." (Document No. 42, p.9) (emphasis added) (quoting Document No. 27, pp. 22 and citing Document No. 27, p.23)).

The Court was, and is, persuaded by Defendant's arguments. In response to the instant motion, Defendant correctly states:

> The Court fully understood these terms, yet found Term 3 to be indefinite because, without an objective boundary to determine the spring rate of the baseline structure, no one – not even a person of ordinary skill in the art – can ascertain whether the spring rate of the

>     second structure is "increased" or not in comparison to the baseline
>     structure.

(Document No. 48, p.15) (citing Document No. 42, pp. 11-12).

Although the underlying claim construction may seem unartfully worded to attorneys well-versed in patent law, the undersigned respectfully disagrees that the decision was made based on issues not raised by the parties. Plaintiff understandably disagrees with the result, as may an appellate court, but the decision *was* based on the briefs presented by the parties, as well as their arguments at the claim construction hearing. In short, the undersigned concludes that Defendant's briefs present the better argument on the issues before the Court. See (Document No. 28, pp. 18-20; Document No. 38, pp. 12-13; and Document No. 48).

In addition, after review of the record and briefs, the undersigned does not find that: (1) there has been an intervening change in controlling law, (2) there is additional evidence not previously available, or (3) the prior decision was based on clear error or will work a manifest injustice." See Mayfield v. NASCAR, 3:09-CV-220-GCM, 2010 WL 3212030, at *1 (W.D.N.C. Aug. 12, 2010).

Based on the foregoing, the undersigned will respectfully decline to issue a revised claim construction in this matter.

## CONCLUSION

**IT IS, THEREFORE, ORDERED** that "Plaintiff Indratech LLC's Motion For Reconsideration Of This Court's Claim Construction Order" (Document No. 45) is **DENIED**.

Signed: April 26, 2018

David C. Keesler
United States Magistrate Judge